IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID PIO and TY STEPHENS,            )
individually and on behalf of others   )
similarly situated,                    )
                                       )
                  Plaintiffs,          )
                                       )
         vs.                           )   No. 06 C 2140
                                       )
GENERAL NUTRITION COMPANIES,           )
INC.,                                  )
                                       )
                  Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiffs David Pio and Ty Stephens filed a class action in the Circuit Court of Cook County (no 02-ch-14122), seeking damages and equitable relief against defendant General Nutrition Companies, Inc. ("GNC"), for alleged false marketing of certain products containing steroid hormones. Plaintiffs allege violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*) ("CFA"), and unjust enrichment. Defendant removed the case to this court under 28 U.S.C. §§ 1334 and 1452(a), claiming relatedness to a bankruptcy proceeding of one of the manufacturers of the steroid hormone products: MuscleTech. Defendant then moved to transfer venue to the Southern District of New York, where the MuscleTech bankruptcy proceeding is currently pending. Plaintiffs subsequently filed a motion to remand this case back to the state court. For the reasons set forth below, plaintiffs' motion to remand is granted, and defendant's motion to transfer venue is denied as moot.

### BACKGROUND

#### State Court Proceedings

On August 8, 2002, plaintiffs David Pio and Wallace McDonald filed a complaint in the

Circuit Court of Cook County on behalf of themselves, and others similarly situated, against GNC, alleging violation of the CFA and unjust enrichment (plf. rep. in support of mo. to remand, exh. B). They filed an amended complaint on April 4, 2004. Plaintiffs claim that GNC is a large retailer of dietary supplements and operates stores nationwide, including many in Illinois. Plaintiffs allege that GNC sold more than 20 products containing steroid hormones that were manufactured by a number of different companies, including MuscleTech. According to plaintiffs, GNC marketed these products as being anabolic, in other words, as producing increased strength and muscle mass (*id.* at ¶4). Plaintiffs claim that these products were not anabolic since they did not produce any of the results claimed (*id.*). They further allege that had they produced the advertised results, they would have been considered illegal controlled substances under Illinois law (720 ILCS 570/102)(*id.*). Also, they allege that GNC knew that the products were ineffective and that it had a duty to inform consumers of that fact. Yet, it failed to do so, continuing to market the products as "anabolic."

Plaintiffs are citizens of Illinois and seek to represent a class of purchasers from Illinois, all of whom claim to have lost money purchasing steroid hormone products from GNC. Plaintiffs further assert that defendant's conduct violates the CFA and constitutes unjust enrichment. They seek class certification, a "judgment requiring GNC to repay the monies paid by the Class for GNC's Steroid Hormone Products," an injunction preventing GNC from continuing unfair and deceptive sales conduct, punitive damages, and such other and further relief that the court deems proper.

On March 16, 2006, the state court granted defendant's motion to strike plaintiffs' motion for class certification; granted plaintiffs motion to withdraw and substitute a class representative, and granted plaintiffs additional time – to May 3, 2006 – to file an amended motion for class certification (def. resp., exh. E). Plaintiffs subsequently substituted Ty

Stephens for Wallace McDonald as a named plaintiff (*see* plf. mot. for remand and exh. B).

Removal

In January 2006, MuscleTech commenced a proceeding under Canada's Companies' Creditors Arrangement Act ( the "CCAA"), pending in the Ontario Superior Court of Justice Commercial List. MuscleTech also commenced an action under Title 11 in the United States Bankruptcy Court for the Southern District of New York, which was subsequently removed to the District Court for the Southern District of New York (def. mot. to transfer at ¶1). MuscleTech filed a motion in the bankruptcy court requesting that the CCAA proceeding be recognized as the "foreign main proceeding," pursuant to chapter 15 of the Bankruptcy Code (11 U.S.C. § 1501, *et seq.*).

On April 17, 2006, GNC removed the instant case to this court, claiming we have jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 1452(a), because this case is related to the MuscleTech bankruptcy.[1] GNC then filed a motion to transfer venue to the Southern District of New York. Plaintiffs filed a motion to remand back to state court, claiming that we do not have jurisdiction because this case is not related to the MuscleTech bankruptcy, or, alternatively, that we should exercise our discretion to remand this matter back to state court.

ANALYSIS

Subject Matter Jurisdiction

General principles of removal and remand apply to bankruptcy as well as non-bankruptcy actions. *See* Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 128 (1995).

---

[1] GNC simultaneously removed five other steroid hormone cases pending in state courts in New York, Pennsylvania, New Jersey, California and Florida (*see* Abrams v. General Nutrition Companies, Inc., 06-cv-1820 (D.N.J.); Guzman v. General Nutrition Companies, Inc., 06-cv-02326 (C.D. Ca); Brown v. General Nutrition Companies Inc., 06-cv-80391 (S.D. Fl.); Toth v. Bodyonics, et al., 06-cv-01617 (E.D. Pa.); Rodriguez v. General Nutrition Companies Inc., 06-cv-02987 (S.D.N.Y.)) to their respective federal district courts.

Under the general removal statute, defendants may remove any case where the district courts have original jurisdiction. 28 U.S.C. § 1441(a). Removal statutes are to be construed narrowly and the presumption is against removal. Illinois v. Kerr-McGee Chemical Corp, 677 F.2d 571, 576 (7th Cir. 1982). The party seeking to remove the case to federal court has the burden of proving federal jurisdiction. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Doubts about the existence of federal jurisdiction, based on removal, are to be resolved in favor of remand. Jones v. General Tire and Rubber Co., 541 F.2d 660, 664 (7th Cir. 1976).

28 U.S.C. § 1334(b) states that "[e]xcept as provided...the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11"(*emphasis added*). Cases initiated in state court that fall under this provision are removable to federal court under 28 U.S.C. § 1452(a).

To determine whether we have subject matter jurisdiction, we must first determine whether the instant action is one "arising in," "arising under," or "related to" the MuscleTech bankruptcy proceeding. Cases arising in or arising under title 11 are ones which "pertain[] to questions that arise during the bankruptcy proceedings and concern the administration of the bankruptcy estate, such as whether to discharge the debtor." Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 161 (7th Cir. 1994). Defendants have not alleged, nor do we believe, that this case fits that narrow definition. Therefore we need only determine whether plaintiffs' case is related to the MuscleTech bankruptcy.

While "related to" jurisdiction is clearly more expansive that either "arising in" or "arising under" jurisdiction, the Supreme Court has cautioned that a "court's 'related to' jurisdiction cannot be limitless." Celotex Corp. v. Edwards, 514 U.S. 300, 398 (1995). Other circuits have developed and adopted broad tests to determine "related to" jurisdiction (*see* Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984). However, this circuit has articulated a

more narrow test "out of respect for Article III as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." In re Fedpak Systems, Inc., 80 F.3d 207, 213-14 (7th Cir. 1996).

Under this test, "a case is related to a bankruptcy when the dispute affects the amount of property for distribution (*i.e.* the debtor's estate) or the allocation of property among creditors." *Id.* (citing In re Memorial Estates, Inc., 950 F.2d 1364, 1368 (7th Cir. 1992)(internal quotations omitted). This language "is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for the bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum." Zerand, 23 F.3d at 161. "A secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of the property in the bankrupt estate." *Id.* at 161-62.

This case does not fall into the first category of "related to" cases. MuscleTech is not a party to this case, nor has GNC sought to join it as such. Therefore, we are primarily concerned with the second type of "related to" cases.

GNC claims that this case will affect the amount of property in the bankrupt estate because, it claims, MuscleTech is contractually obligated to indemnify GNC for any liability it incurs as a result of selling MuscleTech's product. In support, GNC provides a number of purchase orders covering transactions between GNC and MuscleTech, all of which include the following indemnity clause:

> 12. INDEMNITY. The Seller agrees to indemnify the Buyer from and against all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the products or any litigation based thereon, and such indemnity shall survive acceptance of the goods and payment therefore by the Buyer.

(def. resp., exh.A).

GNC's argument that this provision provides GNC with a current claim against MuscleTech for indemnification finds support in the orders promulgated by the bankruptcy court. These orders enjoin the commencement or continuation of product liability claims against MuscleTech, or non-debtor parties who can claim indemnification from MuscleTech, including GNC. (*id.*, exh. C). Those orders, issued after similar orders were issued in the CCAA proceeding, state:

> Unless a temporary restraining order is issued, it appears to the Court that there is a material risk that one or more parties in interest will continue the prosecution of a Product Liability Action (including scheduled discovery) or commence similar product liability litigation based on products sold by MDI involving one or more of the Foreign Applicants [MuscleTech] or the Non-Applicant Defendants [GNC], thereby potentially interfering with or causing harm to, the Monitor's efforts to administer the Foreign Applicants' estates pursuant to the Canadian Proceedings, and increasing the potential claims against the Foreign Applicants' estates as they and the Non-Applicant Defendants incur further defense costs and expenses ....

(*id.*, exh. C at 3).

The New York court clarified this order, stating that "[p]rosecution in any respect of any 'Product Liability Action'... is stayed to the extent such action is against...General Nutrition Corporation...[or] any other defendant in a Product Liability Action who claims indemnification from MuscleTech or its subsidiaries"[2] (*id.*). Based on the content of these orders, it is clear that this case is related to the MuscleTech bankruptcy, in that any litigation costs incurred by GNC in defending this case are likely be borne by the MuscleTech estate through the contractual indemnity clause, thereby reducing the amount of the estate for distribution. Therefore, we have subject matter jurisdiction over this case.

---

[2] This stay has been extended most recently to October 30, 2006. *See* In re MuscleTech Research & Development, Inc. et al., 06-cv-538 (JSR) (dkt entry 115).

Equitable Remand

Plaintiffs request that we exercise our discretion and remand this matter back to state court. We have the authority to do so under 28 U.S.C. § 1452(b), which states, in pertinent part: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

Our courts have laid out several factors to consider when determining whether an equitable remand is necessary. We must consider whether, (1) there is duplication of judicial resources or uneconomical use of judicial resources; (2) the remand will adversely affect the administration of the bankruptcy estate; (3) the case involves questions of state law better addressed by a state court; (4) there are comity considerations; (5) there is prejudice to unremoved parties; (6) the remand lessens the possibility of inconsistent results; and (7) the court where the action originated has greater expertise. Baxter Healthcare Corp. v. Hemex Liquidation Trust et al., 132 B.R. 863, 867-68 (N.D. Ill. 1991). The analysis for permissive abstention and equitable remand are almost identical. Klohr, 2006 WL 1207141 at *14. ap Therefore, the factors here are to be applied flexibly, and "no one factor is necessarily determinative." In re Chicago Milwaukee, St. Paul & Pac R.R., 6 F.3d 1184, 1189 (7th Cir. 1993).

While some factors support our retention of this case, others support remand. It is true that this case relates to the MuscleTech bankruptcy, and that its retention and subsequent transfer to the New York court would assist in the effective administration of the bankruptcy estate, especially given that MuscleTech is contractually obligated to indemnify GNC for litigation expenses. This would promote judicial economy and lessen the chance for

inconsistent results regarding the bankruptcy estate.[3] However, other factors support remand.

Plaintiffs' suit is not based on federal law – only state law claims are plead. Their claim is only remotely related to the MuscleTech bankruptcy. MuscleTech is not a party to these proceedings, nor has GNC sought to join them. Additionally, plaintiffs claim that if this case were remanded, they would amend their complaint and class definition to eliminate all relation to MuscleTech.(plf. reply at 4).[4] Furthermore, plaintiffs assert claims against GNC for over 20 steroid hormone products, only one of which was manufactured by MuscleTech, making the connection to MuscleTech that much more remote.

Furthermore, plaintiffs' choice of forum is an important consideration. Klohr, 2006 WL 1207141 at *19. Here, plaintiffs, citizens of Illinois, are seeking to represent a class of persons who purchased GNC products in Illinois, and who sued in state court under state law. Plaintiffs would be prejudiced by having to travel to New York to litigate their claims.

Finally, remand would further any comity considerations due the state court. *See*

---

[3] The ability of these cases to be consolidated has yet to be determined. While the parties were briefing this issue, the California case was remanded back to state court (plf. reply. exh. A). Since then, the New Jersey case has been removed and transferred to the New York court (Abrams v. General Nutrition Companies, Inc., 2006 WL 2739642 (D.N.J. Sept. 25, 2006)), and the other three cases have motions for remand which are still awaiting decisions. Rodriguez, 06-cv-02987 (S.D.N.Y.); Brown, 06-cv-80391 (S.D. FL); Toth, 06-cv-01617 (E.D. Pa.). It appears that the motion for remand in the New York case is in limbo at this time due to the stay in the related proceedings, since nothing has been filed in that case since June 1, 2006, when defendant submitted notice of the stay.

[4] Plaintiffs have stated that, prior to removal from state court, they had been granted leave to amend their class definition to limit the class to those persons who bought steroid hormone products other than those manufactured by MuscleTech, and amend their complaint to remove all references to MuscleTech. (plf. reply at 4). If plaintiffs are successful in this endeavor, the case will no longer have any relation to the MuscleTech bankruptcy. (*See* Guzman, 06-cv-02326 (C.D. Ca.)(Order Granting Plaintiff's Motion For Remand at 21 n47). GNC's indemnification provision only provides for indemnity for products manufactured by MuscleTech, and it thus would not be able to claim indemnity for an action not involving those products.
Additionally, if plaintiffs succeed in amending their class definition, it is possible this case will no longer fall under the stay order issued by the New York court. While defendant points out that product liability actions are to be stayed against non-debtor defendants such as GNC, it is clear from the stay order itself, that the stayed actions must involve MuscleTech products. (*See* def. mem. in opp., exh. C, at 4)("all persons and entities are hereby enjoined from continuing any Product Liability Action...based on products sold by [MuscleTech], involving one or more of the...Non-Applicant Defendants [GNC]). Under any other definition, GNC "would sweep" every product liability claim to the New York court, regardless of the manufacturer of the product involved. *See* In re Asbestos Litigation, 271 B.R. 118, 125 (S.D.W.V. 2001).

Baxter, 132 B.R. at 868. While the issues here of state law are neither difficult nor unsettled, "whenever possible, state courts should decide issues of state law, particularly when, as here, state-law claims were sued on originally in state court." Klohr, 2006 WL 1207141 at *16; *see also* In re United States Brass Corp., 110 F.3d 1261, 1265 (7th Cir. 1997)("we cannot share [defendant's] indignation that questions of Illinois law should be decided by the state court of Illinois rather than by this court"). In addition, while we are obviously familiar with Illinois law, the experts are undoubtedly the state court in which this matter originated. Baxter, 132 B.R. at 868.

In balancing these "equitable grounds," we find that they weigh in favor of declining jurisdiction and remanding this case back to state court.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for remand is granted, and defendant's motion for transfer of venue is denied as moot.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JAMES B. MORAN
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Senior Judge, U. S. District Court

Oct. 31
_____, 2006.